IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD G. A.,[1]                          )
                                          )
                     Petitioner,          )
                                          )
vs.                                       )      Civil No.  17-cv-1046-CJP[2]
                                          )
COMMISSIONER OF SOCIAL SECURITY,          )
                                          )
                     Respondent.          )
                                          )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Donald G. A., represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in December 2013 initially alleging disability beginning in June 2012. (Tr. 202-03). He was denied benefits initially and upon reconsideration. (Tr. 139-42; 148-50). At the July 2016 evidentiary hearing before Administrative Law Judge (ALJ) Lisa R. Hall, he amended his alleged onset date to December 2013. (Tr. 63; 18). After the hearing, ALJ Hall denied his claim. (Tr. 18-26). The Appeals Council denied review making ALJ Hall's decision the final agency decision. (Tr. 1-6). Plaintiff exhausted administrative remedies and filed a

[1] In keeping with the Court's recently adopted practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This matter was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 29.

timely complaint with this Court.  (Doc. 1).

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred by ignoring Plaintiff's use of a cane;
2. The ALJ's credibility finding is erroneous; and
3. The ALJ erred by not finding Plaintiff's left knee arthrosis was a severe impairment.

## Applicable Legal Standards

To qualify for SSI benefits, a claimant must be disabled within the meaning of the applicable statutes and regulations.  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).[3]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  As is relevant to this case, the DIB and SSI statutes and regulations are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

determine whether a claimant is disabled.  The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

Weatherbee v. Astrue, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three, and cannot

perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). See also, *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997); Moore v. Colvin, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Hall followed the five-step analytical framework described above. She determined Plaintiff has not engaged in substantial gainful activity (SGA) since December 2013, and that Plaintiff's sole severe physical impairment is degenerative disc disease. However, ALJ Hall found that none of Plaintiff's impairments met or medically equaled a listed impairment. (Tr. 20).

ALJ Hall concluded Plaintiff had the RFC to perform light work, but with various limitations. The exertional and postural limitations were that Plaintiff "…can lift and carry or push/pull 20 pounds occasionally and 10 pounds frequently. He can sit, stand and/or walk for at least six hours each in an eight-hour workday. He can perform occasional postural activities." (Tr. 21-22). Based on the vocational expert's testimony, ALJ Hall concluded that although Plaintiff was incapable of performing his past relevant work, "[he was] capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 25-26).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff and is confined to the relevant time period.

### 1. Agency Forms

Plaintiff was born in January 1962 and was fifty-one years old on his amended alleged onset date in December 2013. (Tr. 201; 63). He normally weighs around one hundred fifty-five pounds and is five feet, nine inches tall. (Tr. 219).

Prior to Plaintiff's alleged onset date, he graduated high school, served six years in the United States Army (Tr. 232), and nearly completed junior college. His past civilian work history was primarily related to home maintenance and repairs. (Tr. 220; 232). Plaintiff's monthly income included one hundred twenty-seven dollars from the Department of Veterans Affairs (VA) service-connected disability pension, and supplemental nutrition assistance program (SNAP) benefits. He paid fifty dollars per month for rent through his county housing agency, and his mother helped with his electric bill and groceries. (Tr. 202-03).

Herniated discs; a left knee injury; a broken right shoulder; and possible renal cell carcinoma, post partial left nephrectomy, limit Plaintiff's ability to work. (Tr. 219). He reported "bad back problems" and experiencing "serious pain all day." Both of Plaintiff's knees give out, and his right shoulder has bothered him since he sustained a fracture. (Tr. 249). He also reported, "Any lifting bothers my back, it's hard to squat, bend, stand too long, reach too far, walk too long, and sit or kneel…" (Tr. 254). Plaintiff can only walk about one small block before needing to stop and rest for about ten to fifteen minutes. Plaintiff reported using a cane and brace when he moves around, and that he has used those devices since they were prescribed in 2009. (Tr. 255).

Plaintiff was taking numerous medications, prescribed by various providers, to treat pain, an enlarged prostate, and difficulties sleeping. (Tr. 222). He said his conditions negatively affect his sleep despite taking medication, and that he sometimes requires help dressing, washing clothes, and lifting. Further, because he cannot stand long before experiencing pain, he rarely cooks; Plaintiff mainly

6

prepares sandwiches or quick foods. He does not drive because some of his medications make him drowsy. (Tr. 250). He depends on his mother for his grocery shopping, banking, and bill paying. (Tr. 252).

## 2. Evidentiary Hearing

Plaintiff was represented by counsel at the July 2016 hearing. Plaintiff and a vocational expert (VE), Thomas Holcomb, Ed.D., both testified under oath. (Tr. 60-89). Plaintiff testified that he was fairly certain that he has not worked since 2010. Plaintiff testified that he has physical and mental conditions that prevent him from working (Tr. 68), and that his overall condition has worsened over the past several years. Since 2012, he broke his shoulder; his back and knee pain increased; and he was involuntarily committed twice for psychiatric care. (Tr. 85).

Plaintiff described that his back and knee pain increase after stretching too hard, bending over, lifting up, squatting, and sitting. His back pain radiates down his right leg, and he was told not to lift anything "heavier than a milk jug." (Tr. 70-71; 73-74). Regarding his back and other pain, Plaintiff was also participating in pain management, taking pain medication, and receiving back injections, which only alleviated his pain for about a week and a half instead of two months as initially projected. He recalled going to the emergency room not long after receiving an injection because his back pain was so severe that he could not walk; he was treated with morphine. (Tr. 69-70).

As for Plaintiff's left knee, he said that he uses his cane anytime he leaves his home because sometimes his knee "gives out" and he does not want to fall; he uses his cane even when walking to his mailbox approximately one hundred feet from

his apartment. (Tr. 80-81). He further explained that if he bears weight on his left knee for about twenty minutes, walking or standing, he begins to feel a burning sensation. If he "stay[s] on it too long, it swells up." When that occurs, he described having a procedure to remove excess fluid from his left knee. (Tr. 72-73).

Additionally, Plaintiff testified that if he could alternate from sitting to standing every twenty minutes throughout the entire day, he believed that he could work as long as it was not strenuous; however, it would be difficult. (Tr. 79). His girlfriend helps him with daily living activities by cooking, washing dishes, doing laundry, and cleaning. (Tr. 80). Concerning other past activities, Plaintiff can no longer play with his grandchildren, play sports, or perform his past work in construction and home repair. (Tr. 81-82).

ALJ Hall then called VE Holcomb. The ALJ's first and only hypothetical completely recorded in the transcript contained a RFC of light work. For the most part, the hypothetical RFC included limitations largely resembling the ultimate RFC finding. VE Holcomb concluded that the first hypothetical individual could not perform Plaintiff's past work as a maintenance carpenter. However, he determined such an individual would be able to perform three other job positions that exist within the national economy: (1) cashier II; storage rental clerk; and furniture rental clerk. (Tr. 87-88). Plaintiff's attorney asked the VE whether his conclusion would differ if ALJ Hall's first hypothetical individual had to alternate between sitting and standing every twenty minutes throughout the entire day. VE Holcomb said an individual with such limitations "wouldn't be able to do those

[three positions]." (Tr. 88).

### 3. Third Party Function Report

Plaintiff's mother completed and submitted a function report in March 2014, which largely echoed Plaintiff's reports of his functional limitations. (Tr. 241-48). She reported that Plaintiff uses a cane and back brace when he is in pain. She indicated that she believed his cane and back brace were both prescribed by a doctor. (Tr. 247).

### 4. Medical Evidence

Plaintiff's records indicate that he primarily receives treatment from the Department of Veterans Affairs (VA). Prior to his amended alleged onset date in December 2013, Plaintiff's VA records indicate a history of left leg and knee diagnoses, pain complaints, and treatment. They also indicate that Plaintiff receives service-connected disability benefits from the VA for a diagnosis of "left knee patellofemoral pain syndrome," which arose after sustaining left knee and leg injuries while he served in the United States Army in the 1980s. (Tr. 862-75; 1423-32).

In February 2014, Plaintiff contacted the VA to report left knee pain and request an appointment with the orthopedic department for a left knee brace. However, before he could meet with orthopedics, he had to have an x-ray and be assessed, evaluated, and diagnosed. (Tr. 882). Plaintiff's left knee x-ray image, taken that same month, revealed he had a bone infarct nearly ten centimeters in size at his distal femur. (Tr. 1430).

By March, Plaintiff visited the orthopedic clinic. He reported left knee

instability and explained that he had a left knee brace in the past that helped, and he asked for a new one. After examination, he was assessed with left knee instability and a new left knee brace was ordered for Plaintiff. (Tr. 1299). He was fitted for and instructed on its use and care that same day. (Tr. 1296).

After meeting with orthopedics, Plaintiff presented to the VA for a follow-up with his primary care physician to assess his need for a left knee brace in late April 2014. Plaintiff was observed ambulating with a cane upon arrival and during the examination. He reported experiencing pain and weakness in his left knee. (Tr. 1166). Plaintiff's doctor noted a three-year history of muscle aches or pain in his knee. After the examination, his physician assessed him with left knee pain and instability (Tr. 1162). Ultimately, Plaintiff was fitted again and issued a left knee brace. (Tr. 1285).

Plaintiff presented for a physical therapy consultation in early May 2014 regarding his left knee pain, which would become aggravated by walking. He was observed walking with a left knee brace and a cane. (Tr. 1274-75). Upon examination, it was observed that the musculature in his left leg above his knee was noticeably atrophied. Further, he stood with a slight left knee flexion, and his gait was slow with a wide base of support. He appeared to favor his left leg. Other tests were conducted and revealed pain. Plaintiff was assessed with showing signs and symptoms of "OA, tightness of thigh musculature, and atrophy of quadriceps…" The physical therapist and Plaintiff's primary care physician agreed Plaintiff would benefit from physical therapy to improve his pain and function. (Tr. 1274-75).

Further, the VA noted an emergency room record dated in late March 2015 from St. Francis hospital in Cape Girardeau, Missouri; it indicated Plaintiff presented with back and leg pain. (Tr. 1329). Then in December 2015, Plaintiff transferred to a new VA clinic for treatment, and a nurse practitioner noted that Plaintiff has "low back pain, left knee pain for which he wears a brace." (Tr. 1306).

A few weeks later, on January 8, 2016, Plaintiff's service-connected knee and lower leg conditions[4] were again assessed for completion of a VA disability benefits questionnaire. A nurse practitioner with the VA completed the assessment and questionnaire. (Tr. 1423-32). Plaintiff reported: aggravation in his left leg/knee discomfort from engaging in weight bearing and physical use activities such as standing stationary for greater than fifteen to twenty minutes, or walking further than one-half to one mile. Relief can be obtained with rest, positioning, hot shower, heat application, and oral medication. Plaintiff has a history of physical therapy, use of equipment, and medication management for treatment of his left knee. (Tr. 1424-25). Plaintiff exhibited pain upon examination when bearing weight on his left leg. Nurse practitioner noted that despite a steady and well-balanced gait, Plaintiff exhibited pain located at the superior aspect of his left knee and that it was tender to palpation. Notably, objective evidence of crepitus in his left knee was observed. (Tr. 1425-26). The nurse practitioner also noted that Plaintiff's February 2014 left knee x-ray was considered significant for diagnostic purposes as it revealed Plaintiff had a bone infarct almost ten centimeters in size in

---

[4] The diagnosis of left "patellofemoral pain syndrome" is associated, and has been since 1985, with Plaintiff's left knee condition. (Tr. 1424).

his distal left femur. (Tr. 1430). The VA nurse practitioner also noted Plaintiff's assistive device as a left knee brace for support and that he was not wearing it; there was no mention of whether Plaintiff reported his cane or that he was observed with one. (Tr. 1430).

Remarkably, even though the nurse practitioner was unable to determine whether Plaintiff had any functional limitations of his left knee with repetitive use,[5] she opined that Plaintiff's conditions "impact his ability to perform any type of occupational task (such as standing, walking, lifting, sitting, etc.)." The nurse practitioner added, "As to employability with regard to his service connected left knee condition: The veteran would be better suited to less physically demanding types of work activities. He could perform work involving alternating periods of sitting, standing and walking about with limitations on kneeling and squatting on the left." (Tr. 1431-32).

On January 20, 2016, Plaintiff called and spoke with a VA nurse about his need to have a "prosthetic" issued. The nurse noted that Plaintiff reported seeing and receiving a prescription for a prosthetic device from Dr. Appleman. The note indicated "Dr. Appleman's office will fax what they have but [the prescription] was given to [patient]." The nurse left a voice message for Plaintiff relaying that information and asking him to clarify whether he dropped off the prosthetic device prescription from Dr. Appleman. She added that the "VA most likely will not cover that [prescription from outside prosthetics]." The note did not include what device

---

[5] The nurse practitioner said that this testing was not conducted under conditions necessary for repetitive use assessment; therefore, it would be impossible to form a conclusion regarding whether Plaintiff had repetitive use limitations without engaging in "mere speculation." (Tr. 1426).

he was prescribed.  (Tr. 1422).

In mid-March 2016, it was documented Plaintiff's right knee hurt, but on that same date another entry by a different VA provider noted that Plaintiff presented complaining of issues with his left knee (Tr. 1528), and that he had x-ray imaging taken of his left knee because of his left knee pain.  (Tr. 1526).  The 2016 image when compared to the February 2014 image did not reveal any changes with the bone infarct and coarse calcification of Plaintiff's left distal femur; however, degenerative changes of the posterior patellar surface were documented. (Tr. 1527; 1559).  He explained his discomfort with his left knee feels like burning inside the joint at times and that this occurs with increased activity.  Ibuprofen helps relieve his pain and burning discomfort.  (Tr. 1528).

On April 19, 2016, Plaintiff called the VA and reported waking up with severe left knee pain and that his left knee appeared swollen.  Plaintiff was instructed to come to the VA emergency department.  (Tr. 1613-14).  However, no other records indicated what care, if any, Plaintiff sought or had.

In May 2016, Plaintiff met with a podiatrist consulting for the VA.  He reported left knee pain and that his shoes wear out fast because he turns his left foot out to alleviate his left knee pain when walking.  Upon exam, Plaintiff exhibited decreased flexion and an externally rotated left foot when walking.  The podiatrist assessed Plaintiff with left knee arthrosis and a gait abnormality.  He recommended plaintiff have another orthopedic consultation, and dispensed arch supports and ordered reinforcement for posterior/lateral heels.  (Tr. 1641-43).

### 5.  State Agency Consultative Examination

Plaintiff met with state agency consultative examiner, Michael W. McCall, Jr., M.D., for a physical examination in April 2014. (Tr.1100-08). Dr. McCall cited Plaintiff's previous VA records from early 2014, which contained brief health summaries only dating back to early 2011. Dr. McCall also noted Plaintiff's two assistive devices as "[s]ingle prong prescribed cane and back brace." (Tr. 1101).

Plaintiff reported being unable to work secondary to herniated discs in his back, and taking medications that make him dizzy and tired. He characterized his radiating back pain as a shooting sensation down his right leg. During the examination, Plaintiff rated his pain as nine-out-of-ten in intensity, but Dr. McCall observed that he was able to sit comfortably on the exam table. Plaintiff did not use an assistive device and exhibited normal station, gait, and coordination. (Tr. 1101). Plaintiff's bilateral straight leg raise was ten degrees, and Dr. McCall added that he exhibited poor effort. (Tr. 1102). He did not have full range of motion in his: shoulders, hips, and knees. (Tr. 1103; 1105). Plaintiff had mild difficulties with walking; moderate difficulties squatting, and moderate "[n]eed/use of [an] assistive device." He was unable to hop on one leg. (Tr. 1106). Dr. McCall's diagnosis of Plaintiff was "[b]ack pain, etiology unknown, duration years. Not currently undergoing medical management." Last, Dr. McCall provided:

> The claimant is able to sit, stand, walk, lift, and handle objects without difficulty during this exam today. His speech, listening, reasoning and social skills all seem age appropriate. He did not utilize any assistive device during this exam and does not appear to require one outside of the exam room either.

(Tr. 1102).

### 6. State Agency Consultants' Review

In June 2014, the initial determination explanation did not clearly provide Plaintiff's physical RFC; nonetheless, Plaintiff was determined not to be under disability. (Tr. 111-22). In December 2014, James Hinchen, M.D., upon reconsideration, determined that Plaintiff could perform light work with exertional and manipulative limitations. (Tr. 132-33).

## Analysis

Plaintiff argues that ALJ Hall's decision is unsupported by substantial evidence because in assessing his RFC, she ignored undermining evidence; failed to consider all of his impairments, individually and in combination; and erroneously discounted his statements concerning the limiting effects that his symptoms have on performing daily activities. He contends ALJ Hall's errors were harmful because at best, the evidence establishes that he only has the RFC to perform sedentary work, which would have resulted in a finding that he was disabled under the guidelines as he was over fifty years old when ALJ Hall issued her decision.[6] For the reasons below, the Court agrees with Plaintiff.

ALJ Hall failed to build a structurally sound bridge here. The central issue is ALJ Hall's failure to consider an entire line of evidence regarding Plaintiff's left knee impairment. Of Plaintiff's alleged disabling impairments, ALJ Hall found that his degenerative disc disease was his sole severe physical impairment and never mentioned his leg impairment when assessing the RFC despite an entire line of

---

[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14 (providing that claimant between ages of 50 and 54 is disabled if limited to sedentary work, has education that does not provide for direct entry into skilled work, and has no transferable skills from previous work experience); *see Haynes v. Barnhart,* 416 F.3d 621, 627–628 (7th Cir.2005) (explaining that grids determine whether claimant is disabled when claimant matches all criteria of particular rule).

evidence that includes records referencing his decades old service-connected left knee injury diagnosed as patellofemoral pain syndrome, and the most recent diagnosis of left knee arthrosis.

Both Plaintiff and the Commissioner correctly point out that Step Two findings are a "*de minimis* screening for groundless claims." Even so, an ALJ is still required to consider all impairments, severe and non-severe, when assessing a plaintiff's RFC. 20 C.F.R. 404.1545. The failure to designate a particular impairment as "severe" at Step Two does not matter to the outcome of the case as long as the ALJ finds at least one severe impairment, continues on with the analysis, and considers the combined effect of all impairments, severe and non-severe. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010). Here, without conceding that his left knee impairment is not severe, Plaintiff alternatively argues that ALJ Hall erred when assessing his RFC because she failed to consider evidence establishing his left knee arthrosis and related limitations that affect his ability to perform work related activities such as standing and walking.

The Commissioner counters that although ALJ Hall arguably erred by not finding Plaintiff's left knee impairment severe, that a diagnosis alone does not establish its resulting functional limitations upon which an RFC must be crafted. This argument is unavailing because the Plaintiff's brief points to evidence in the record well beyond just a mere left knee diagnosis. (Doc. 16, p. 11).

Although the ALJ need not discuss every piece of evidence in the record, the ALJ must confront evidence that does not support her conclusion and explain why

she rejected it. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The ALJ is not permitted to ignore entire lines of evidence and must articulate reasons for rejecting entire lines of evidence. *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994). Simply put, ignoring entire lines of evidence is improper because a reviewing court cannot uphold an ALJ's decision based upon reasons not articulated by that ALJ. *Kastner v. Astrue*, 687 F.3d 642, 648 (7th Cir. 2012). It is impossible for a reviewing court to determine whether the ALJ's decision rests upon substantial evidence when the ALJ fails to sufficiently express what evidence she accepted or rejected and why; a reviewing Court is not in the business of *guessing* what the ALJ did or did not decide. See, *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000).

Here, the Court must agree with Plaintiff. First, ALJ Hall merely referenced Plaintiff's left knee one time in her brief summary of Plaintiff's testimony but never discussed it anywhere else throughout her decision. (Tr. 22). Her decision is completely void of any mention or discussion related to the significant evidence of Plaintiff's left knee impairment and related limitations. The record includes a documented history of Plaintiff's service-connected injuries, multiple x-rays confirming a bone infarction and coarse calcification of Plaintiff's distal left femur, and other objective observations of gait abnormality, swelling, crepitus, and atrophy. (Tr. 1643; 1581; 1430; 1425-26; 1274). Yet, ALJ Hall ignored this evidence, failing to mention it at all. Further, ALJ Hall also failed to consider evidence of Plaintiff's left knee pain complaints, reported limitations, any aggravating or alleviating factors, and his course of treatment, including medication

and physical therapy related to his left knee impairment. (Tr. 844; 863; 875; 1174; 1156; 1641; 1655). Additionally, the record even included evidence that Plaintiff received shoe inserts and a prescription for another shoe device after explaining to a consulting podiatrist his left shoe sole wears out because he turns his left foot out to alleviate his left knee pain when walking. (Tr. 1631; 1641). This is precisely the type of evidence supportive of Plaintiff's claim that he has a disabling left knee impairment that limits his ability to perform work related activities such as walking and standing. Because this evidence is supportive of his claims that he is disabled, it strongly undermines ALJ Hall's decision that Plaintiff is not disabled, especially when her decision only mentioned Plaintiff's physical impairments of degenerative disc disease, right shoulder fracture, partial left nephrectomy, and right knee pain.[7] (Tr. 24). Thus, ALJ Hall was required to confront this undermining evidence and explain how she rejected it in reaching her decision.[8] Without any meaningful discussion of Plaintiff's left knee arthrosis, this Court has no idea what ALJ Hall thought about this significant evidence. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), citing *Clifford v. Apfel*, 227 F.3d 863,

---

[7] ALJ Hall determined "[d]iagnostic reports reveal only very mild degenerative disc disease of the right shoulder, lumbar spine and right knee (Exhibit C5F)." (Tr. 24). First, anatomically speaking, this is unclear because shoulders and knees do not have discs that can degenerate. Most of all however, her mention of Plaintiff's right knee obviously fails to address his left knee.

[8] The Court notes that ALJ Hall devoted a paragraph to Plaintiff's impairments that she determined were not severe. (Tr. 24). There, she only identified Plaintiff's renal cell mass and subsequent partial nephrectomy as well as Plaintiff's July 2013 right shoulder fracture. She then discussed these two impairments and articulated reasons why she determined they did not result in more than minimal physical function limitations. ALJ Hall's decision on this issue demonstrates that she is aware of her responsibility to confront and reject evidence, which leaves this Court puzzled as to why she never engaged in such an analysis regarding Plaintiff's left knee impairment. Her silence concerning Plaintiff's left knee raises the question: Did she merely overlook it, or did she in fact reject it? The Court has no idea because she failed to provide a finding that would allow meaningful review.

873-74 (7th Cir. 2000); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). Plainly, her failure to consider this evidence fatally compromises the structure of the unsound bridge she built.

The Commissioner continues by asserting that ALJ Hall's light work RFC determination, which included her finding that Plaintiff can stand and walk at least six hours each during an eight-hour workday, is supported because she relied on Dr. McCall's April 2014 consultative examination that documented Plaintiff was able to ambulate effectively during the exam. (Doc. 25, p. 10). However, the Court is not persuaded because Dr. McCall's examination is insufficient to support ALJ Hall's finding, both independently and in light of the significant evidence ALJ Hall ignored.

First, Dr. McCall's consultative examination report contained internal conflicts that neither he nor ALJ Hall reconciled before ALJ Hall relied on his opinion that Plaintiff can stand and walk without difficulty. Dr. McCall first noted that Plaintiff had a "[s]ingle prong prescribed cane and a back brace," but then he wrote, "The claimant is able to...stand [and] walk...without difficulty during the exam today." Dr. McCall added that "[Plaintiff] did not utilize any assistive device during this exam," and he opined that Plaintiff "does not appear to require one outside of the exam room either." (Tr. 1101-02). However, the "Degrees of Difficulty in Performance" worksheet indicated that Dr. McCall concluded Plaintiff has a "moderate need/use of an assistive device." (Tr. 1106). His consultative examination report did not include any explanation that reconciled these conflicts.

The ALJ has the responsibility to resolve conflicts, and her method of doing

so must be reasonable and adequately explained in order to build an accurate and logical bridge from the evidence to her conclusions. *Clifford v. Apfel*, 227 F.3d at 872 (2000). Here, the internal conflict present within this evidence is patently obvious, and ALJ Hall ignored the conflict. In doing so, she ignored the evidence supportive of Plaintiff's claims that his ability to walk and stand are limited resulting in his moderate need/use of his prescribed cane to walk and stand. Instead of employing a method of resolve, ALJ Hall selectively zeroed in on Dr. McCall's opinion that Plaintiff could stand and walk without difficulty to conclude that Plaintiff is capable of light work. Therefore, she neglected her responsibility and opted to impermissibly cherry-pick the evidence. See, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Because ALJ Hall failed to adequately articulate her explanation as to how she rejected the portions of Dr. McCall's opinion that support Plaintiff's claims and undermine her conclusions, she failed to build the requisite logical bridge.

Moreover, Dr. McCall's statement that Plaintiff did not use a cane during the exam, and his opinion that Plaintiff did not appear to require one outside of the exam room are insufficient to support the finding that Plaintiff can "…stand and/or walk for at least six hours each in an eight-hour workday." In *Scott v. Astrue*, the Seventh Circuit Court of Appeals held that a "brief excursion" hardly demonstrates an ability to stand for 6 hours, and neither did Scott's testimony she could only walk two blocks. 647 F.3d 734, 740 (7th Cir. 2011). Here, Dr. McCall's consultative report does not contain any information about the specific conditions of Plaintiff's walking examination, and the Court highly doubts that Plaintiff walked

and stood for six hours during the exam. Without more information and an explanation, a gap exists between the evidence that Plaintiff was able to walk on exam without a cane and ALJ Hall's conclusion that Plaintiff could stand and/or walk for six hours each in an eight-hour workday. Therefore, based on the aforementioned reasons, ALJ Hall's reliance on Dr. McCall's opinion is independently insufficient to substantially support her conclusion that Plaintiff has the RFC to perform light work and can "stand and/or walk for at least six hours in an eight-hour workday."

Further, the Commissioner continues by attempting to lay the connecting beams from the evidence to support ALJ Hall's conclusion that Plaintiff can walk and/or stand for six hours each during the workday. In doing so, the Commissioner cites a page from the March 2012 VA service-connected disability review questionnaire to argue that Plaintiff had no functional limitations. However, this evidence that the Commissioner relies on to rationalize ALJ Hall's decision must be rejected; it contains reasons that ALJ Hall did not raise herself. In fact, ALJ Hall never even mentioned the exhibit (C8F) the Commissioner cites to. Thus, it must be rejected because the Commissioner's argument violates the *Chenery* Doctrine. *Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

Furthermore, even if this was not a *Chenery* violation, the Court finds this evidence does not logically support ALJ Hall's decision anyway. This evidence, utilized by the Commissioner to prove Plaintiff had no functional limitations as of March 2012, predates Plaintiff's amended alleged onset date by nearly two years.

Using evidence from before a Plaintiff claims that he is disabled to support a decision that he has few or no limitations and is therefore "not disabled" at a later time is not only illogical, it is unfair.

Last, the Commissioner asserts that all of this amounted to no more than harmless error because ALJ Hall would have likely reached the same conclusion had she considered all the evidence and evaluated it. "But the fact that the ALJ, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

In sum, ALJ Hall ignored a significant amount of evidence supportive of Plaintiff's claims that he is disabled because of a left knee impairment that limits his ability to perform work related activities such as standing and walking. She was required to confront this evidence and explain how she rejected it; she did not. Further, her reliance on Dr. McCall's April 2014 consultative examination is insufficient to support her RFC determination because Dr. McCall's examination report included internal conflicts that ALJ Hall failed to resolve, which amounted to ALJ Hall selectively cherry-picking portions of Dr. McCall's examination report to bolster her conclusion while ignoring other portions of the same report that are supportive of Plaintiff's claims. Because the record demonstrates significant evidence exists in the record that ALJ Hall was required to consider in her RFC determination but did not, and that evidence does not lead to an inference that ALJ Hall would have reached the same conclusion had she considered it, the Court, but

more importantly the Plaintiff, are left with an unreviewable decision that was riddled with harmful errors. Therefore, remand is required. *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012).

As to the first remaining issue raised by Plaintiff, it is clear that ALJ Hall failed to sufficiently engage with the significant evidence related to Plaintiff's left knee impairment and resulting limitations, including his cane. As indicated above, included among that evidence are medical observations that Plaintiff ambulated with a cane, reported his cane was prescribed, corroborating third-party reports indicating a belief that Plaintiff's cane was prescribed, Plaintiff's use of a cane and his testimony about his use of the cane at the hearing, and medical records from the VA about Plaintiff's cane. This evidence certainly raises a question about whether Plaintiff's cane was medically necessary. But regardless of whether it is a medical necessity, ALJ Hall completely failed to mention or discuss any of this evidence, again leaving the Plaintiff and this Court concerned about whether she accidently overlooked it, purposefully ignored it, or actually considered and rejected it without mentioning it. Therefore, this Court must reverse ALJ Hall's decision as it cannot be upheld based on reasons she failed to articulate. See, *Thomas v. Colvin*, 534 Fed.Appx. 546, 550-51 (7th Cir. 2013)(citing *Kastner v. Astrue*, 697, F.3d 642, 648 (7th Cir. 2012); *Jelinek v. Astrue*, 662 F. 3d 805, 811 (7th Cir. 2001)).

The Plaintiff's point here, like the plaintiff's in *Thomas*, is that ALJ Hall should have minimally articulated her finding about the cane to show she considered it because his need/use of cane, in light of his impairments, is the type

of evidence that supports Plaintiff's claims of disability while simultaneously undermining the opposite conclusion. The Court also notes that Plaintiff's position regarding the cane issue is different than the Commissioner's stance that ALJ Hall did not have to *account* for Plaintiff's cane use because Plaintiff did not establish his cane was medically necessary. However, Plaintiff simply urges that ALJ Hall was required to make a reviewable finding about the cane, regardless of whether it is ultimately deemed a medical necessity. The Court agrees, and also reasons that doing so would advance the interests of judicial economy. Therefore, the Court instructs the ALJ upon remand to address this issue in light of the record evidence because Plaintiff's reliance on a cane raises several inferences that are supportive of his claims.

Regarding Plaintiff's final remaining issue that ALJ Hall's subjective symptom analysis was flawed because she improperly discounted his daily activities, the Court agrees. ALJ Hall's reasons for discounting his daily activities are nonsensical. It is improper basis to discount Plaintiff's subjective complaints and resulting limitations simply because "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty," and "it is difficult to attribute that degree of limitation to the claimant's medical condition...in view of the relatively weak medical evidence and other factors..." *Beardsley v*. Colvin, 758 F.3d 834 (7th Cir. 2014). Therefore, the ALJ upon remand should carefully employ the proper analysis for evaluating plaintiffs' subjective symptoms and resulting limiting effects, especially in accordance with the 20 CFR 404.1529(c) factors.

Following the line of cases discussed throughout, this case must be remanded to the Commissioner for rehearing. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Donald G. A.'s application for SSI benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE: September 28, 2018.**

**s/Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
